**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| M. H. WIND DOWN, LLC, | ) | Case No. 24-13904 |
| | ) | Chapter 11 (Subchapter V) |
| Debtor. | ) | Hon. Janet S. Baer |
| | ) | |

**AMENDED**
**CHAPTER 11 PLAN**

David Christian (IL #6274704)
DAVID CHRISTIAN ATTORNEYS LLC
105 W. Madison St., Suite 2300
Chicago, IL 60602
312-282-5282
dchristian@dca.law

PROPOSED COUNSEL FOR DEBTOR

Dated: March 27, 2025
    Chicago, IL

M. H. Wind Down, LLC (formerly known as Hayes Mechanical, LLC), debtor and debtor-in-possession (the "Debtor"), by and through its proposed counsel, submits this chapter 11 plan (the "Plan"), pursuant to sections 1189 and 1190 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code").

## Article I –
## Introduction, Background, and Events During Chapter 11 Case

Pursuant to section 1190(1)(A) of the Bankruptcy Code, the Debtor provides the following background on the business operations of the Debtor. On September 19, 2024 (the "Petition Date"), the Debtor filed a voluntary petition under subchapter V of chapter 11 of title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division (the "Bankruptcy Court"). On September 25, 2024, Matthew Brash was appointed as the subchapter V trustee in the above-captioned case. On October 16, 2024, the United States Trustee conducted and concluded the section 341 meeting of creditors.

The Debtor's business began with the founding of Dan Hayes Boiler & Repair Co. in 1918, by Daniel Hayes, a boilermaker, in Chicago's Uptown neighborhood. After World War II, Hayes was joined in the business by his son-in-law, John T. Mooney. In 1965, their premier pressure vessel repair company, began to fabricate boiler stacks, tanks, and vessels in its own shop. Mooney later bought out his father-in-law.

In 1967, the company began working on the maintenance and repair of power boilers, including burner and control work. The company added air conditioning service, which led to the company providing pipefitting and welding services to both commercial and industrial clients. In 1968, Richard J. Mooney joined his father's management team.

The company added rental boilers, piping fabrication, temperature control installation and maintenance, and fluid engineering services to its business lines in the 1970's. The company's headquarters moved from the Hayes storefront to a warehouse building at Clark and Leland and adjacent parcels in Chicago. In 1979, the company changed its name to Hayes Boiler & Mechanical Inc.

John T. Mooney's youngest son, John D. ("J.D.") Mooney, joined the company's management team in 1980, while Richard took over the majority of the day-to-day management of the company from their father. The sons eventually bought out their father. J.D. is the current Manager of the Debtor.

The company outgrew its Clark Street facility by the 1990's, moving to 2160 N. Ashland Ave. in 1993. In 1995, the company added stud welding to its business, servicing a seven state territory on various power and utility boilers. During this period, the company entered into various joint ventures, such as with McCartin McAullife to form Power Maintenance Constructors and Standard Boiler & Tank Co. to form Standard Hayes. In 1997, the company brought sheet metal business in house. At that time, the company shortened its name to Hayes Mechanical Inc.

In 2000, the company sold itself to Consolidated Engineering, a division of Charles Smith Properties. Consolidated Engineering was later sold to the EMCOR Group. Then, the

2

Hayes/Mooney family and the former Hayes management team bought back the Hayes Mechanical business.

In 1998, the company moved its headquarters to 5959 S. Harlem Ave. in Chicago. The company opened its first satellite office in Omaha, Nebraska, during 2009, followed by offices in Arizona, Michigan, and Pennsylvania. The company opened an office in Minnesota in 2015. By this time period, the company employed union laborers across ten states.

On or about December 30, 2021, the Debtor sold substantially all of its assets to Hayes Commercial, LLC and Hayes Services, LLC (the "Buyers"). Since then, the Debtor has not conducted business operations, other than managing its alleged liability for asbestos claims. As of the Petition Date, the Debtor faces approximately 120 claims asserting exposure to asbestos.

Prior to the Petition Date, some, but not all, of the asbestos claims alleged against the Debtor were being defended by one or more of the Debtor's insurers under reservations of rights. Leading up to the Petition Date, the Debtor faced a settlement demand in a trial-ready case in an amount exceeding the Debtor's ability to fund, and the Debtor's insurers denied coverage for the claim and declined to authorize an amount for settlement of the claim. The Debtor then commenced the above-captioned case.

Since the closing of the sale of the Debtor's assets, the Buyers have operated using the "Hayes Mechanical" trade name. In response to the Debtor's commencement of the above-captioned case, and in violation of the automatic stay imposed by section 362(a) of the Bankruptcy Code, the Buyers filed their Complaint alleging breach of contract in the Circuit Court of Cook County, Illinois (the "Illinois State Court"), on September 27, 2024, against the Debtor, as well as Helco Corp., Mycenaean Shield LLC, J.D. Mooney, and Richard Mooney (the "Debtor's Affiliate Co-Defendants"). On October 11, 2024, the Illinois State Court entered its Order dismissing the Buyers' Complaint without prejudice. On November 18, 2024, the Buyers refiled their Complaint, this time naming only the Debtor's Affiliate Co-Defendants. The Debtor's Affiliate Co-Defendants timely removed the action from the Illinois State Court to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1334(b) and 1452(a) on December 17, 2024. The Buyers have also filed a proof of claim in the Case.

Additionally, at the time of the closing of the sale of the Debtor's assets, account number XXXX4102 (the "Account") at PNC Bank, N.A. ("PNC") was titled in the Debtor's name. Since the closing of the sale of the Debtor's assets, the Buyers failed to effect the transfer of the Account to their names or establish a new account at PNC.

As a result, upon the occurrence of the Petition Date, concerned that the Account and its proceeds might be subject to an interest of the Debtor in property, PNC denied the Buyers access to the funds deposited by the Buyers' customers since the Petition Date. The Debtor claims no beneficial interest in the proceeds deposited by the Buyers' customers in the Account.

On November 21, 2024, PNC filed its *Complaint for Interpleader* under Adversary Proceeding No. 24-00343 (the "Interpleader") in connection with the above-captioned case seeking to deposit the Account proceeds with the Bankruptcy Court. On November 27, 2024, the Buyers filed a *Motion by Parties in Interest Hayes Commercial, LLC and Hayes Services, LLC to*

*Dismiss Pursuant to 11 U.S.C. § 1112(B)(1)* [Docket No. 24] (the "Dismissal Motion"). The Dismissal Motion is premised on the disruption to the Buyers' operations allegedly resulting from the Debtor's commencement of this case under its legal name, "Hayes Mechanical, LLC."

Since then, at the direction of the Bankruptcy Court and with the assistance of the Subchapter V Trustee, the Debtor, the Buyer, and PNC have agreed to resolve the Interpleader and the Dismissal Motion through the entry of Stipulated Judgment authorizing and directing transfer of the Account proceeds to the Buyers. Additionally, to allay any confusion in the marketplace or in legal proceedings, the Debtor agreed with the Buyers to request authority from the Bankruptcy Court to (a) change its name with the Delaware Division of Corporations and any other appropriate authorities, and (b) modify the caption in this chapter 11 case. The Bankruptcy Court subsequently entered the Stipulated Judgment and granted the Debtor's motion to change its name and modify the case caption, resolving the Dismissal Motion.

On March 12, 2025, the Bankruptcy Court heard the motion of General Casualty Insurance Company and JMS Environmental Associates, Ltd. for relief from the automatic stay in the Case in order to continue pursuing prepetition litigation for property damage on a project in DuPage County, Illinois. Because the movants sought to limit their recoveries to available insurance only, the relevant insurer is providing the Debtor with a complete defense, and the relevant insurance policy contains an asbestos exclusion, the Debtor consented to the relief and the Bankruptcy Court granted the motion.

## Article II –
## Definitions and Rules of Construction

Unless defined in article I above, the capitalized terms used herein shall have the respective meanings set forth below. Any term used but not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. Whenever the context requires, words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender and vice versa. All exhibits and schedules attached to this Plan are incorporated herein.

1.1    "Administrative Claim" means any Claim against the Debtor for an Administrative Expense.

1.2    "Administrative Claims Bar Date" means the date that is sixty (60) days after the Effective Date.

1.3    "Administrative Claims Objection Deadline" means the date by which objections to Administrative Claims shall be filed with the Bankruptcy Court and served upon the respective Holder(s) thereof, which date shall be ninety (90) days after the Effective Date unless extended by order of the Bankruptcy Court.

1.4    "Administrative Expense" means any cost or expense of administration of the Case incurred on or before the Effective Date entitled to priority under section 507(a)(2) and allowed

under section 503(b) of the Bankruptcy Code, including the actual and necessary expenses of preserving the Debtor's Estate and/or operating the Debtor's businesses.

1.5     "Affiliate" includes the entities identified in section 101(2) of the Bankruptcy Code and all of the Debtor's members and the members of the Debtor's managing member.

1.6     "Allowed" means with respect to an Administrative Claim, a Priority Tax Claim, a Fee Claim, a General Unsecured Claim, or any portion thereof, a Claim that either (a) has been allowed by a Final Order that has not been reconsidered as of the Effective Date, (b) was listed in the Schedules as neither disputed, contingent nor unliquidated, has not been superseded by a timely Proof of Claim and for which no objection has been filed by any party in interest as of the Effective Date, or (c) is set forth in a timely-filed Proof of Claim in a liquidated amount, as to which no objection has been filed on or before the Claims Objection Deadline or within any other period fixed by the Bankruptcy Code or a Final Order of the Bankruptcy Court for the filing of an objection.

1.7     "Business Day" means any day other than a Saturday, Sunday, or "legal holiday" as that term is defined in Federal Rule of Bankruptcy Procedure 9006(a).

1.8     "Case" means the bankruptcy case commenced by the Debtor in the Bankruptcy Court on the Petition Date under subchapter V of chapter 11 of the Bankruptcy Code under Case No. 24-13904.

1.9     "Claim" means a claim as defined in section 101(5) of the Bankruptcy Code.

1.10     "Claimant" means the Holder of a Claim.

1.11     "Claim Objection Deadline" means the date by which objections to Claims other than Administrative Claims and Priority Tax Claims shall be filed, which date shall be sixty (60) days after the Effective Date.

1.12     "Claims Reviewer" will initially be [_____] and any successor thereto subsequently appointed by the Bankruptcy Court.

1.13     "Class" means a class of Claimants described in articles V and VI of the Plan.

1.14     "Collateral" means any property of the Debtors subject to a valid and enforceable lien to secure the payment of a Claim.

1.15     "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.16     "Confirmation Hearing" means the hearing to be held by the Bankruptcy Court pursuant to Bankruptcy Code section 1128 and as may be continued from time to time, to consider confirmation of this Plan.

1.17     "Confirmation Order" means the order of the Bankruptcy Court confirming this Plan.

1.18   "Disallowed" means, with respect to any Claim, or portion thereof, any Claim or portion thereof against the Debtor which: (a) has been withdrawn, in whole or in part, by agreement of the particular Debtor and the Claimant; (b) has been withdrawn, in whole or in part, by the Claimant; or (c) has been disallowed, in whole or in part, by the Bankruptcy Court. In each case, a Disallowed Claim is disallowed only to the extent of disallowance or withdrawal.

1.19   "Disputed" means, a Claim to which an objection has been or may be timely filed or deemed filed under applicable law by the Debtor or any other party in interest and for which any such objection has not been: (a) withdrawn, (b) overruled or denied by a Final Order, or (c) granted by a Final Order. For purposes of the Plan, a Claim that has not been Allowed shall be considered to be Disputed, whether or not an objection has been or may be timely filed, if (1) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (2) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (3) any corresponding Claim has been scheduled in the Schedules as disputed, contingent, or unliquidated, (4) no corresponding Claim has been scheduled in the Schedules, or (5) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect to that Claim.

1.20   "Dissolution Date" means the date on which the dissolution of the Debtor becomes effective under the laws of the State of Delaware.

1.21   "Distribution" means any one-time, initial, or periodic payment of cash or distribution of consideration to holders of Allowed Claims pursuant to this Plan.

1.22   "Effective Date" means a Business Day selected by the Debtor at least fourteen (14) days and no more than eighteen (18) days after the Confirmation Date and on which (a) the Confirmation Order has become a Final Order, and (b) all conditions to the effectiveness of this Plan have been satisfied or waived as provided in article X of this Plan.

1.23   "Estate" means the bankruptcy estate created at the time of the Debtor's bankruptcy filing containing all property of the Debtors pursuant to section 541 of the Bankruptcy Code.

1.24   "Evaluation Factors" means the factors for the Claims Reviewer to consider in assigning points for purposes of distributions from the Tort Claims Pool set forth in Exhibit B to this Plan.

1.25   "Fee Application" means an application for the allowance of a Fee Claim.

1.26   "Fee Claim" means a Claim against the Debtor's Estate by a Professional or any other party in interest pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or otherwise relating to services performed and expenses incurred after the Petition Date and prior to and including the Effective Date.

1.27   "Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to Federal Rule of Bankruptcy Procedure 3022.

1.28   "Final Order" means either: (a) an order as to which the time to appeal, petition for writ of certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend

findings or judgment has expired and as to which no appeal, petition for writ of certiorari or other proceedings in which a party is seeking reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall then be pending or (b) in the event that an appeal, writ of certiorari, reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment thereof has been sought, an order that has been affirmed by the highest court to which such order was appealed, or certiorari has been denied or from which reargument, rehearing, reconsideration, new trial, or motion to alter or amend findings or judgment was sought, and for which the time to take any further appeal, petition for writ of certiorari or move for reargument, rehearing, reconsideration, new trial, or to alter or amend findings or judgment shall have expired, provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

1.29   "General Unsecured Claim" means any Claim against the Debtor that is not a Secured Claim, not entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, and not a Disputed Tort Claim, unless excluded from such classification and classified separately under this Plan.

1.30   "Holder" means a Person that is the beneficial owner of a Claim. For purposes of a Distribution, a Person must be a Holder as of the Effective Date.

1.31   "Insurance Policies" means any and all policies, subscriptions, binders, or the like for general commercial liability policies or professional services policies issued to, or for the benefit of, the Debtor or its predecessors, or to cover any projects, jobs, assignments, or sites at which the Debtor or its predecessors worked.

1.32   "Insurer" means any or all of the underwriting companies that issued Insurance Policies and their respective parent companies, affiliates, predecessors, successors, assigns, representatives, agents, adjusters, claims handlers, attorneys, and other professionals.

1.33   "Liquidation Analysis" means the liquidation analysis and projections with respect to the ability of the debtor to make payments under this Plan attached hereto as "Exhibit A" and incorporated herein by reference.

1.34   "Membership Interests" means the interests of the member(s) of the Debtor as a Delaware limited liability company.

1.35   "Other Priority Claim" means any Claim that, if Allowed, would be entitled to priority under sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code.

1.36   "Person" means and includes any natural person, corporation, limited partnership, general partnership, joint venture, trust, land trust, business trust, unincorporated organization, or other organization, irrespective of whether he, she or it is a legal entity, government agency, political subdivision thereof or other entity, as such term is defined in section 101(15) of the Bankruptcy Code.

1.37   "Priority Tax Claim" means any Claim against the Debtors that, if Allowed, would be entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.38    "Proof of Claim" means a statement in writing of a Claim on, or consistent with, the Official Form 10 proof of claim form, against the Debtor filed with the Bankruptcy Court.

1.39    "Professionals" means those Persons defined as professional persons in sections 327 and 1103 of the Bankruptcy Code and who have been employed pursuant to an order of the Bankruptcy Court in the Case.

1.40    "Reinstated" means to receive the cure of all defaults on or after the Effective Date and reinstatement of the maturity, payment schedule, and other terms of the Debtor's indebtedness on account of a Secured Claim for which the Debtor is the primary or sole obligor in accordance with section 1124(2) of the Bankruptcy Code.

1.41    "Remaining Cash" means the Debtor's cash or cash equivalents, including less than $100,000.00 in the Debtor's debtor-in-possession bank account, subject to reduction after payment in full of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims.

1.42    "Schedules" means, collectively, the schedules of assets and liabilities and the Statement of Financial Affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 1007, as such schedules and statements may be supplemented or amended.

1.43    "Secured Claim" means a Claim that is secured by a security interest in or lien on property of the Estate to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Holder's interest in the Estate's interest in such property, as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or as otherwise agreed upon in writing by the Debtor and the Holder. Secured Claims shall include Claims secured by security interests or liens junior in priority to existing security interests or liens, whether by operation of law, contract, or otherwise, but solely to the extent of the value, as of the Effective Date or such other date established by the Bankruptcy Court, of such Holder's interest in the Estate's interest in such property, after giving effect to all security interests or liens senior in priority; provided, however, that for purposes of this Plan, the term Secured Claim does not include any portion of a Disputed Guaranty Claim.

1.44    "Subchapter V Trustee" means the duly appointed and acting trustee as of the Effective Date appointed by the United States Trustee pursuant to section 1183 of the Bankruptcy Code.

1.45    "Tort Action" means any action initiated by the filing of a complaint, petition, cause of action, counterclaim, crossclaim, or other judicial or administrative proceeding asserting that the Debtor owes damages for alleged personal injury, wrongful death, or other tortious conduct or asserted breach of duty.

1.46    "Tort Claim Review Period" means the time between the Effective Date of this Plan and the date that is two years after the Effective Date of this Plan.

1.47    "Tort Claims Pool" means the proceeds of settlements with Insurers received during the Tort Claims Review Period.

1.48   "Unclassified Claims" means Administrative Claims and Priority Tax Claims.

**Article III –**
**Summary of the Plan**

This article merely summarizes certain major elements of this Plan. The remaining sections of this Plan deal with each of these subjects in greater detail. Those later sections are controlling, and this summary will not change or be used to construe the other provisions of this Plan. Holders of Claims against the Debtor are encouraged to read this Plan in its entirety.

The Plan classifies Claims against the Debtor as follows:

- Unclassified Claims – Administrative Claims and Priority Tax Claims;
- Secured Claims
- Class 1 – Other Priority Claims;
- Class 2 – General Unsecured Claims;
- Class 3 – Disputed Tort Claims; and
- Class 4 – Membership Interests.

Secured Claims will be Reinstated to the extent Allowed.

Holders of Unclassified Claims, Other Priority Claims, and General Unsecured Claims will be paid in full on the later of the Effective Date or when such Claim is both Allowed and due under applicable nonbankruptcy law.

Holders of General Unsecured Claims that become Allowed Claims will be paid pro rata from the Debtor's Remaining Cash, if any, after payment in full of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims, plus a pro rata share of any post-Effective Date income or assets recovered by the Debtor prior to the Dissolution Date

Holders of Disputed Tort Claims that become Allowed Claims will receive the applicable proceeds of any Insurance Policies in accordance with applicable nonbankruptcy law after establishing the Debtor's liability in a court of competent jurisdiction other than the Bankruptcy Court.

**Article IV –**
**Unclassified Claims**

4.1   Administrative Claims

The Confirmation Order shall serve as an order setting an Administrative Claims Bar Date for sixty (60) days after the entry of the Confirmation Order. Holders of any Administrative Claim, other than (a) a Fee Claim, (b) a previously Allowed Administrative Claim, or (c) a liability incurred and paid in the ordinary course of business by the Debtor or pursuant to an order of the Bankruptcy Court, are required to file with the Bankruptcy Court an application for the allowance

of such Administrative Claim on or before the Administrative Claims Bar Date. Failure to timely file such an application shall result in the Administrative Claim being forever barred.

4.2     Fee Claims

Each Professional who holds or asserts an Administrative Claim that is a Fee Claim incurred prior to the Effective Date shall be required to file with the Bankruptcy Court and shall serve on all parties required to receive notice, a Fee Application within sixty (60) days after the Effective Date, in accordance with the requirements of the Bankruptcy Code and the Bankruptcy Rules, including Bankruptcy Rule 2016. Any objections to Fee Applications must be filed within ninety (90) days after Effective Date. Failure to timely file a Fee Application as required under this section of this Plan shall result in the Fee Claim being forever barred.

4.3     Allowance of Administrative Claims

(a)     Administrative Claims Other Than Fee Claims. An Administrative Claim other than a Fee Claim that has been timely and properly filed shall become an Allowed Administrative Claim if no objection is filed by the Administrative Claims Objection Deadline. If an objection is filed by the Administrative Claims Objection Deadline, such Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by a Final Order.

(b)     Fee Claims. An Administrative Claim that is a Fee Claim, and for which a Fee Application has been timely and properly filed and served pursuant to section 4.2 of this Plan, shall become an Allowed Administrative Claim only to the extent allowed by a Final Order.

4.4     Payment of Allowed Administrative Claims

Each Holder of an Allowed Administrative Claim shall be paid the amount of such Claim in cash on or as soon as practicable after the later of the Effective Date when such Claim becomes an Allowed Claim or shall receive such other treatment as agreed upon in writing by the Debtors and the Holder. Nothing in this Plan prohibits or limits the Holder of an Administrative Claim, including a Fee Claim, from agreeing to accept less than the full amount of its Claim from the Debtor or to accept all or part of its Claim at any time after the Effective Date of the Plan.

4.5     Allowed Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall be paid the Allowed amount of such Claim pursuant to the provisions of section 1129(a)(9)(C) of the Bankruptcy Code after the later of the Effective Date or when such Claim becomes an Allowed Claim.

## Article V –
## Classification and Impairment of Claims and Interests

5.1     Classification in General

A Claim shall be included in a particular Class and shall receive the treatment afforded Claims of such Class only to the extent any such Claim qualifies within the description of that Class. The remainder of any such Claim shall be included in a different Class or Classes to the extent the remaining Claim qualifies for inclusion in such other Class or Classes.

5.2     Resolution of Classification Disputes

The Bankruptcy Court shall have exclusive jurisdiction to resolve any dispute concerning the classification of Claims. Resolution of any such dispute, however, shall not be a condition precedent to entry of the Confirmation Order.

5.3     Designation of Classes

All Claims against the Debtor, other than Administrative Expense Claims and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Status |
|---|---|
| Unclassified: Administrative Expense Claims | Unimpaired |
| Unclassified: Priority Tax Claims | Unimpaired |
| Secured Claims | Reinstated/Unimpaired |
| Class 1: Other Priority Claims | Unimpaired |
| Class 2: General Unsecured Claim | Impaired |
| Class 3: Disputed Tort Claims | Impaired |
| Class 4: Membership Interests | Impaired |

## Article VI –
## Treatment of Classified Claims

6.1     Secured Claims

(a)     Description. The Debtor is not aware of any Secured Claims.

(b)     Treatment. Except to the extent a Holder of a Secured Claim agrees to different treatment, each Holder of a Secured Claim shall be Reinstated to the extent Allowed, including the assumption of any executory contracts related to the indebtedness due to the Holder of a Secured Claim under section 365 of the Bankruptcy Code and article VII of this Plan, cure of all defaults on or as reasonably practicable after the Effective Date, and reinstatement of the maturity, payment schedule, and other terms of the Debtor's indebtedness in accordance with section 1124(2) of the Bankruptcy Code.

(c)    Impairment. Secured Claims are unimpaired under this Plan. The Holders of Secured Claims are conclusively presumed to have accepted this Plan under section 1126(f) of the Bankruptcy Code.

6.2    Class 1: Other Priority Claims

(a)    Description. Class 1 consists of any and all Claims entitled to priority under sections 507(a)(4) through (a)(7) of the Bankruptcy Code. The Debtor is not aware of any Other Priority Claims against it.

(b)    Treatment. Allowed Other Priority Claims, if any, shall be satisfied payment in full by the later of thirty (30) days after: (i) the date on which the Claim becomes Allowed, or (ii) the Effective Date.

(c)    Impairment. Class 1 is unimpaired under this Plan. The Holders of Class 1 Claims are conclusively presumed to have accepted this Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote on its acceptance or rejection.

6.3    Class 2: General Unsecured Claims

(a)    Description. Class 2 consists of General Unsecured Claims.

(b)    Treatment. Holders of General Unsecured Claims that become Allowed Claims will be paid pro rata from the Debtor's Remaining Cash, if any, after payment in full of Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims, plus a pro rata share of any post-Effective Date income or assets recovered by the Debtor prior to the Dissolution Date. For the avoidance of doubt, the Debtor is not presently aware of, and does not anticipate recovering, any post-Effective Date income or assets.

(c)    Impairment. Class 2 is impaired under this Plan. Under section 1126(a) of the Bankruptcy Code, the Holder of a Class 2 Claim may either accept or reject the Plan.

6.4    Class 3: Disputed Tort Claims

(a)    Description. Class 3 consists of Disputed Tort Claims, including all Claims against the Debtor alleging asbestos-related injuries, whether or not the subject of a pending lawsuit.

(b)    Treatment. Holders of Disputed Tort Claims who file Proofs of Claim prior to the Confirmation Date and establish that their Disputed Tort Claims are entitled to be Allowed Claims will receive the applicable proceeds of any Insurance Policies through one of two methods only:

(i)    each Disputed Tort Claim submitted to the Tort Claim Reviewer during the Tort Claim Review Period will be evaluated by the Tort Claim Reviewer on a scale between 0 and 100 based on the Evaluation Factors, and the

12

Holder of such Disputed Tort Claim shall receive his or her share of the Tort Claims Pool, net of the reasonable and necessary expenses associated with administering the Tort Claims Pool, including the fees and costs of the Claims Reviewer and making Distributions, calculated by dividing the points assigned to such Holder of a Disputed Tort Claim by the total number of points assigned to all Disputed Tort Claims by the Tort Claim Reviewer during the Tort Claim Review Period; or

(ii)    any Holder of a Disputed Tort Claim may elect to opt out of the Tort Claims Pool prior to review of such Disputed Tort Claim by the Tort Claim Reviewer by waiving any recovery from the Tort Claims Pool, the Debtor, and the Debtor's bankruptcy estate, and releasing the Tort Claims Pool, the Debtor, the Debtor's bankruptcy estate, in writing, in which case the Holder of a Disputed Tort Claim may commence or continue a Tort Action against "M. H. Wind Down, LLC" as a nominal party only in a nonbankruptcy court of competent jurisdiction to establish the liability of the Debtor, if any, through settlement or judgment, with any defense to be provided, and any settlement decisions made, exclusively by any Insurers with potential liability for such Disputed Tort Claim. After the Effective Date of the Plan, the Debtor shall have no obligation to defend, settle, or appeal any Disputed Tort Claim as a matter of contract or otherwise.

(c)    Impairment. Class 3 is impaired under this Plan. Under section 1126(a) of the Bankruptcy Code, the Holders of Class 3 Claims may either accept or reject the Plan.

6.5    Class 4:  Membership Interests

(a)    Description. Class 4 consists of the Membership Interests of the Debtors sole member, Mycenaean Shield, LLC, and any other equity or ownership interest in the Debtor.

(b)    Treatment. Upon the occurrence of the Dissolution Date, the Membership Interests shall be cancelled.

(c)    Impairment. Class 4 is impaired under this Plan. The Holders of Class 4 Membership Interests are conclusively presumed to have rejected this Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote on its acceptance or rejection.

6.6    Cramdown

The Debtor will request confirmation of this Plan under section 1191(b) of the Bankruptcy Code with respect to each Class that rejects the Plan.

6.7    Discharge

The Debtor will request a discharge in accordance with sections 1181(c) and 1192 of the Bankruptcy Code.

**Article VII –**
**Treatment of Executory Contracts and Unexpired Leases**

7.1    General Treatment of Executory Contracts and Unexpired Leases

By operation of this Plan, any and all prepetition executory contracts and unexpired leases to which the Debtor is a party that have not been assumed or rejected prior to the Confirmation Date shall be deemed assumed on the Confirmation Date, except for executory contracts or unexpired leases that (a) have previously been assumed or rejected pursuant to Final Order of the Bankruptcy Court, or (b) are the subject of a motion to assume that is pending as of the Confirmation Date.

7.2    Cure Payments and Release of Liability

Any Allowed Cure Claim shall be paid in accordance with section 4.4 of this Plan. Notwithstanding the foregoing, to the extent that a party to an executory contract or unexpired lease has failed to timely object to a proposed Cure Claim amount, that party will be deemed to release any Claims for defaults in excess of any cure amount determined by the Bankruptcy Court in connection with the Debtor's assumption of that contract or lease.

7.3    Bar Date for Rejection Claims

If the rejection of an executory contract or an unexpired lease, either by the Debtors or by operation of this Plan, results in damages to the other party or parties to such contract or lease, such parties must file a rejection damages Claim with the Bankruptcy Court and serve it upon the Debtor by the earlier of (a) thirty (30) days after the Effective Date, or (b) such other deadline as the Bankruptcy Court may set for asserting a Claim for such damages. All rejection damages Claims shall be forever barred and shall not be enforceable against the Debtor, the Subchapter V Trustee, or their respective agents, successors, or assigns, unless a Proof of Claim is timely filed and served.

7.4    Rejection Claims

Any allowable rejection damages Claims shall be treated as a General Unsecured Claim pursuant to this Plan, except to the extent they are Guaranty Claims or as limited by the provisions of sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission that such rejection gives rise to, or results in, a Claim, or deemed a waiver by the Debtor of any objections to such Claims if asserted.

7.5    Insurance Policies Not Executory Contracts

For the avoidance of doubt, none of the Insurance Policies are executory contracts under this Plan, and no Insurer shall have a Claim, including a Cure Claim or a rejection damages Claim under this Plan.

**Article VIII –**
**Implementation and Effect of Plan and Confirmation Order**

### 8.1    Binding Effect

This Plan shall be binding upon and inure to the benefit of the Debtor and all Holders of Claims, whether or not they accepted this Plan.

### 8.2    Discharge of Claims

As of the completion of payments provided for under this Plan, without the necessity for further action or order of the Bankruptcy Court or any Person, the Claims against the Debtor will be forever discharged, barred, and enjoined in accordance with section 1192 of the Bankruptcy Code.

### 8.3    Exculpation and Limitation of Liability

Neither the Debtor nor the Debtor's Professionals, or the Subchapter V Trustee, each in his or her respective capacities as such, nor any of their respective officers, directors, employees, advisors, attorneys, agents, Professionals, or other representatives acting in such capacity on or after the Petition Date, shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim, or (with respect to such Claims) any of their respective agents, Affiliates, or any of their successors, or assigns, for any act or omission in connection with, relating to, or arising out of, the filing of the Case, the conduct of the Case, the pursuit of entry of the Confirmation Order, the consummation of this Plan, or the administration of this Plan or assets to be liquidated pursuant to this Plan, except for their bad faith, fraud, willful misconduct, or gross negligence, if any, and in all respects shall be entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities under this Plan and the Bankruptcy Code.

### 8.4    INJUNCTION

THE SATISFACTION, RELEASES, AND EXCULPATIONS CONTAINED IN THIS PLAN SHALL ALSO ACT AS AN INJUNCTION AGAINST ANY PERSON COMMENCING OR CONTINUING ANY ACTION, EMPLOYMENT OF PROCESS, OR ACT TO COLLECT, OFFSET, OR RECOVER ANY CLAIM OR CAUSE OF ACTION SATISFIED, RELEASED, WAIVED, OR REJECTED UNDER THIS PLAN TO THE FULLEST EXTENT AUTHORIZED, PROVIDED, OR AVAILABLE UNDER THE BANKRUPTCY CODE, INCLUDING SECTIONS 524 AND 1192 OF THE BANKRUPTCY CODE AND AS AN EXERCISE OF THE EQUITABLE POWERS OF THE BANKRUPTCY COURT AND THE UNITED STATES DISTRICT COURT UNDER SECTION 105(a) OF THE BANKRUPTCY CODE.   THIS INJUNCTION SHALL PERMANENTLY AND FOREVER STAY, RESTRAIN, AND ENJOIN ANY HOLDER FROM TAKING ANY ACTIONS FOR THE PURPOSE OF DIRECTLY OR INDIRECTLY COLLECTING, RECOVERING, RECEIVING, OR APPLYING PAYMENTS, SATISFACTION, OR RECOVERY FROM ANY PERSON EXCEPT AS PROVIDED IN THIS PLAN.

8.5     Appointment of Claims Reviewer

The Confirmation Order shall constitute an order approving of and appointing the initial Claims Reviewer.

8.6     Qualified Settlement Fund

The Tort Claims Pool is intended to qualify as a "Designated" or "Qualified Settlement Fund" pursuant to section 468B of the Internal Revenue Code and the Treasury Regulations promulgated thereunder.

8.7     Dissolution of the Debtor

After the Effective Date and distribution of the Debtor's Remaining Cash in accordance with this Plan, the Debtor, the Debtor's manager(s), and the Holder(s) of the Debtor's Membership Interests shall each be authorized and directed pursuant to this Plan to take all steps necessary and appropriate to cause the dissolution of the Debtor under the laws of the State of Delaware.

**Article IX –**
**Method of Distribution**

9.1     Making of Distributions

The Debtor will make all Distributions under this Plan, unless the Confirmation Order is entered pursuant to section 1191(b) of the Bankruptcy Code, in which case the Subchapter V Trustee will make Distributions in accordance with section 1194(b) of the Bankruptcy Code. Distributions from the Tort Claims Pool may be made in one or a series of Distributions depending on the timing of receipt of funds into the Tort Claims Pool and the assignment of points by the Tort Claims Reviewer.

9.2     Means of Cash Payment

Cash payments made pursuant to this Plan will be in United States dollars, by the means agreed to by the Debtor or the Subchapter V Trustee, as applicable, and the payee or, in the absence of an agreement, by check or other commercially reasonable means in the payor's sole discretion.

9.3     Fractional Cents

No payments of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment may reflect a rounding of such fraction to the nearest whole cent (up or down).

9.4     Delivery of Distributions

Other than with respect to Administrative Expense Claims, the Debtor or the Subchapter V Trustee, as applicable, shall make Distributions to Holders of Allowed Claims:  (i) at the

addresses set forth on the Proofs of Claim filed by the Holders; (ii) at the addresses set forth in any written notice of address change filed after the date of any related Proof of Claim; (iii) at the addresses reflected in the Schedules if no Proof of Claim or written notice of a change of address has been filed; or (iv) at the last known address of the Holder if no Proof of Claim or written notice of address change has been filed. If any Holder's Distribution is returned as undeliverable, no further Distributions to the Holder will be made unless and until the Debtor and the Subchapter V Trustee are notified of the Holder's then-current address, at which time all missed Distributions will be made to the Holder without interest to the extent funds remain available; provided, however, that entry of a Final Decree shall preclude any missed Distributions.

9.5     Distributions in Complete Satisfaction

The Distributions and other treatments provided for each Claim under this Plan shall be in complete satisfaction, discharge, and release of each such Claim.

9.6     Residual Amounts

Holders of Claims shall have 90 days from the check date to negotiate the Distribution checks issued in satisfaction of their Claims. Payment on such checks shall be stopped and the funds shall revert to the Debtor as the residual beneficiary.

**Article X –
Conditions to Effective Date**

10.1    Conditions to Effective Date

The Effective Date of this Plan shall not occur unless and until:

(a)     the Debtor files and gives adequate notice of all required exhibits and disclosures in connection with the Plan;

(b)     the Bankruptcy Court enters the Confirmation Order; and

(c)     the Confirmation Order becomes a Final Order;

The Debtor may waive the condition set forth in section 11.1(c) in its sole discretion.

10.2    Effect of Failure of Conditions

If the conditions to confirmation set forth in section 10.1 do not occur (and are not waived) within 180 days after the filing of this Plan, then this Plan shall be deemed withdrawn and the Case shall be dismissed, unless an amended plan is filed by the Debtor prior to that date.

**Article XI –**
**Retention of Jurisdiction**

11.1    Jurisdiction

Until entry of the Final Decree, the Bankruptcy Court will retain jurisdiction as is legally permissible under applicable law, including under sections 105(a) and 1142 of the Bankruptcy Code, including that jurisdiction necessary to ensure that the purpose and intent of this Plan are carried out, including as broadly as is legally permissible to hear and determine all matters set forth in section 11.4 below.

11.2    Examination of Claims

Following the Confirmation Date, the Bankruptcy Court will retain jurisdiction to decide disputes concerning the classification and allowance of any Claim and the determination of any objections as may be filed to Claims, except that the Bankruptcy Court will not finally adjudicate any Disputed Tort Claim in accordance with 28 U.S.C. § 157(b)(5). The failure by the Debtor to object to, or to examine, any Claim prior to the Confirmation Date shall not be deemed a waiver of the Debtor's or any other party in interest's right to object to, or to re-examine, the Claim in whole or in part.

11.3    Determination of Disputes

The Bankruptcy Court will retain jurisdiction after the Confirmation Date to determine all: (i) questions and disputes regarding title to the assets of the Debtor; (ii) disputes concerning the classification and allowance of Claims; and (iii) all causes of action, controversies, disputes, or conflicts, whether or not subject to any pending action as of the Confirmation Date, in which the Debtor seeks to recover assets or otherwise pursue his or the Estate's rights.

11.4    Additional Purposes

The Bankruptcy Court will retain jurisdiction after the Effective Date for the following additional purposes:

(a)    to hear and determine any modification of this Plan pursuant to section 1193 of the Bankruptcy Code, to cure any defect or omission or reconcile any inconsistency in this Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary or appropriate to carry out the purposes and effects thereof;

(b)    to assure the performance by the Debtor and the Subchapter V Trustee of their obligations to make Distributions under this Plan;

(c)    to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of this Plan and the transactions contemplated thereunder, the

Confirmation Order, or any other order of the Bankruptcy Court, or to maintain the integrity of this Plan following the Confirmation Date;

(d)     to hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of this Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

(e)     to construe and apply any findings of fact or conclusions of law made in the Confirmation Order or in connection with Confirmation of this Plan;

(f)     to adjudicate matters arising in the Cases, including matters relating to the formulation and consummation of this Plan, or the Adversary Cases;

(g)     to enter any orders, including injunctions, as are necessary to enforce the title, rights, and powers of the Debtors or the Subchapter V Trustee and to impose any limitations, restrictions, terms, and conditions on the title, rights, and powers as the Bankruptcy Court may deem necessary;

(h)     to hear and determine any dispute involving or affecting the validity and enforceability of the discharges, releases, injunctions, and exculpatory relief set forth in article VIII of this Plan;

(i)     to enter the Final Decree;

(j)     to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

(k)     to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(l)     to hear and allow applications for fees and expenses of Professionals pursuant to sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code;

(m)     to adjudicate any adversary proceedings brought by the Debtor, whether or not such adversary proceedings have been commenced before or after the Effective Date;

(n)     to decide issues concerning federal tax reporting and withholding that arise in connection with the confirmation or consummation of this Plan;

(o)     to decide issues concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(p)     to adjudicate any issues concerning assumption or rejection of any executory contracts and unexpired leases, including any disputes concerning rejection damages Claims or cure Claims;

(q)     to hear and determine any and all objections to any Claims, including Administrative Claims, including the allowance, classification, priority, secured status, compromise, estimation, or payment thereof;

(r)     to hear and determine any litigation or causes of action belonging to the Debtor, the Estate, or the Subchapter V Trustee;

(s)     to hear and determine the approval of settlements with Insurers under sections 105(a) and 363(b), (f), and (m) of the Bankruptcy Code;

(t)     to determine the removal of, replacement of, or appointment of a successor to the initial Claims Reviewer;

(u)     to hear and determine any proposed amendments or additions to the Evaluation Factors; and

(v)     to hear and determine any other matter related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## Article XII –
## Miscellaneous Provisions

12.1    Notices

All notices in connection with this Plan, including any notices concerning a change of address for a Holder of a Claim, should be delivered via United States mail, postage prepaid, addressed to the following:

>David Christian
>David Christian Attorneys LLC
>105 W. Madison St., Suite 2300
>Chicago, IL 60602
>
>-and-
>
>Matthew Brash
>Newpoint Advisors Corporation
>750 Old Hickory Blvd.
>Building 2, Suite 150
>Brentwood, TN 37027

and via e-mail to dchristian@dca.law and mbrash@newpointadvisors.us.

### 12.2    Asserting and Curing Defaults Under the Plan

If the Debtor or Subchapter V Trustee defaults under the provisions of this Plan, any creditor or party in interest wishing to assert a default shall provide the Debtor and the Subchapter V Trustee with written notice of the alleged default. The Debtor or the Liquidating Trustee shall have 30 days from receipt of written notice to cure the alleged default. If the default is not cured, any creditor or party in interest may then file with the Bankruptcy Court and serve on the Persons listed in section 13.1 above a motion to compel compliance with the applicable provisions of this Plan. The Bankruptcy Court, on finding a material default, may issue orders compelling compliance with the pertinent provisions of this Plan.

### 12.3    Compliance with Tax Requirements

In connection with this Plan, the Debtor and the Subchapter V Trustee will comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities, and Distributions will be subject to withholding and reporting requirements.

### 12.4    Modification or Revocation of the Plan

The Debtor reserves the right to modify this Plan either before or after entry of the Confirmation Order to the fullest extent permitted under section 1193 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3019, including but not limited to modifications necessary to negotiate the resolution of any objections to confirmation of this Plan. The Debtor may withdraw this Plan at any time before the Effective Date.

### 12.5    Effect of Withdrawal or Revocation of the Plan

If the Debtor revokes or withdraws this Plan before the Confirmation Date, or if either the Confirmation Date or the Effective Date does not occur, then this Plan will be null and void. In such event, nothing contained in this Plan will be deemed to constitute an admission, waiver, or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

### 12.6    Due Authorization

Each and every Holder of an Allowed Claim who elects to participate in the Distributions provided for in this Plan warrants that it is authorized to accept the Distributions provided for in this Plan in consideration of such Claim and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

### 12.7    Implementation

The Debtor and the Subchapter V Trustee are authorized and directed to take all necessary steps and perform all necessary acts to consummate the terms and conditions of this Plan.

12.8    Terms of Injunctions or Stays

All injunctions or stays provided for in the Case under sections 105 or 362 of the Bankruptcy Code or otherwise will remain in full force and effect until the Effective Date unless otherwise provided herein or in the Confirmation Order.

12.9    Integration

This Plan, the Liquidation Analysis, and any other exhibits, schedules, or attachments submitted by the Debtor prior to the Confirmation Date constitute a complete, whole, and integrated statement the Debtor's Plan. Parol evidence shall not be admissible in an action regarding this Plan or any of its provisions.

12.10    Headings

The headings in this Plan are for convenience only and shall not limit or otherwise affect the terms of this Plan.

12.11    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), and except with respect to the implementation of sections 1.19 and 8.5 of this Plan, the laws of the State of Illinois shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, without giving effect to the principles of conflicts of law thereto.

12.12    Computation of Time

If any deadline established under this Plan falls on a day that is not a Business Day, the deadline shall be the next Business Day after such day. The provisions of Federal Rule of Bankruptcy Procedure 9006(a) otherwise govern the computation of any applicable time period under this Plan.

Submitted this 27th day of March, 2025, on behalf of:

                       DEBTOR AND DEBTOR-IN-POSSESSION

                       By:    /s/John D. Mooney_____
                               John D. Mooney, its Manager

DAVID CHRISTIAN ATTORNEYS LLC


/s/David Christian_____
David Christian (IL #6274704)
PROPOSED COUNSEL FOR DEBTOR

**Exhibit A –**
**Liquidation Analysis**

To be filed.

**Exhibit B –**
**Evaluation Factors**

To be filed.